[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated July 27, 1998, the plaintiff Karen Harpie commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, joint legal custody of the minor children, child support, alimony, counsel fees, a division of the marital estate pursuant to Connecticut General Statutes Section 46b-81 and other relief. The defendant Joseph P. Harpie appeared through counsel and filed an answer and cross-complaint on September 8, 1998. Both parties were represented by counsel throughout the proceedings until the court granted plaintiff's counsel's motion to withdraw appearance on January 20, 2000. Thereafter the plaintiff represented herself pro se. The court appointed Attorney Frank Santy to represent the interests of the minor child, Justin Harpie, as attorney for the minor child, Justin Harpie, by order of the court on September 23, 1998.
The plaintiff, the defendant with his counsel and counsel for the minor child appeared before the court on May 4 and May 5, and 31, 2000 and presented testimony and exhibits. The court after hearing the testimony and viewing the exhibits makes the following findings of fact.
The plaintiff (whose maiden name was Karen Krist) married the defendant husband on October 12, 1974 at Broad Brook, Connecticut. The plaintiff has resided continuously in the state of Connecticut for one year next preceding the date of the filing of the complaint. All statutory stays have expired. At the commencement of the dissolution of marriage action the plaintiff and defendant had three minor children issue of their marriage, Colton Harpie born January 17, 1989, Justin Harpie born February 1, 1984 and Brent Harpie born February 21, 1980. Since the date of the complaint the child Brent Harpie has reached the age of majority. No other minor children have been born to the wife since the date of the marriage. The court further finds that no state or municipal agency has or is contributing to support of the parties and their minor children.
The defendant who proceeded at trial on the cross-complaint is 54 years old and a recipient of a bachelor of science degree from the University of Hartford in 1968. He has enjoyed and presently enjoys good physical health. The defendant worked extensively in the banking industry until 1994 when a bank merger resulted in consolidation of the work force and a pink slip to the defendant. At the time of his termination he was working for Fleet Bank making approximately $54,000.00 per year. The defendant was out of work until January of 1995 when he was reemployed at the First City Bank of N.B. His starting pay was $35,000.00 per year and at the time of the termination of his services at said bank in the middle of 1997 the defendant was earning approximately $45,000.00 per year. After successfully completing an application and interview process, the defendant was hired by the State of Connecticut as a Senior Loan Officer at a starting salary of $73,900.00. The defendant remains employed by the CT Page 7101 State of Connecticut and intends to remain so employed in the future. According to the testimony and financial affidavit of the defendant, the defendant presently earns approximately $78,400.00 per year.
The plaintiff wife is 55 years old at the time of trial. She also has enjoyed and presently enjoys good physical health with the exception of medication taken for atrial fibrillation. Said physical condition places no physical and/or occupational limitations on the plaintiff according to her uncontroverted testimony.
The plaintiff received a bachelors of science degree in graphic arts in 1968. The plaintiff stayed home during the majority of the marriage to raise the four children of the marriage while the defendant worked in the banking industry and was active in politics and municipal office in the town of Newington. The plaintiff returned to work after the defendant was laid off. The plaintiff commenced employment at Strategies, a telemarketing firm on a part-time basis. The plaintiff has obtained work on a full-time basis and presently earns approximately $36,400.00 from her present employment at Strategies as a supervisor of the sales unit. The plaintiff will continue to work at Strategies. She will not seek retraining in her field of education due to her lack of training and expertise in computers and other new technical changes in her field. She further does not have sufficient income to pay for retraining while employed on a full-time basis at Strategies.
The parties were married in 1974 and their union has resulted in the birth of four children, two of whom are presently under the age of majority. As previously stated the defendant worked in the banking industry while the plaintiff stayed at home to raise the children. The parties enjoyed marital life as a family residing in the town of Newington. The plaintiff maintained the home and the children while the defendant worked on a full time basis. The defendant also was actively involved in politics and the Republican party. He served as a public official in elected and non-elected capacity in the town of Newington. In addition to the defendant's job, political activities and municipal government service, the defendant found time to interact with the children as coach of various sporting teams and further as an active participant in their other extracurricular activities. The defendant further helped him while he campaigned for political office.
The parties took substantially different positions concerning the cause for the breakdown of the marriage. The defendant contended that the marriage started to break down in late 1993 and 1994. The financial and emotional strain from his unemployment coupled with the lack of sufficient income obtained from the plaintiff's part-time employment resulted in the family's use of savings to sustain the family expenses. CT Page 7102 The plaintiff and defendant also developed different methods of parenting and discipline for the minor children. The substance abuse of the parties' eldest daughter, child discipline problems and physical altercations between the minor child Brent and the plaintiff also damage the marriage. The defendant further claimed that total disagreement as to the child rearing and discipline also contributed to the breakdown.
The plaintiff contended that the defendant's lack of appropriate discipline with the children in addition to his inability to deal with Brent's abuse of his mother was the cause of the breakdown of the marriage. She further alleged both physical, psychological and emotional abuse at the hands of her husband, the defendant as a contributing factor.
After hearing the witnesses and analyzing their testimony, the court concludes that the defendant has properly stated the causes for the breakdown of the marriage. The court also finds that the defendant was not physically or emotionally abusive to the plaintiff. The court finds that the plaintiff was intractable as to her position in dealing with the children and her constant demand for her husband's assistance in disciplining the children in a way only she felt appropriate.
The parties are left with a fractured personal relationship resulting in the division of the care, custody and love of the minor children. The defendant presently resides with the minor child Justin. Justin has lived with him on a seven day a week basis since December of 1998. The court finds that the father is the primary caretaker of Justin and that it would be further in the best interests of Justin that the father and mother only share joint legal custody of the minor child. Due to the estrangement of Justin and mother, visitation with the mother should be by mutual consent only. The mother has made little if any efforts to contact the child since December of 1998. Her use of Justin to babysit his younger brother Colton and purchase of clothes and holiday gifts do not reach the level of parenthood to require the court to order shared parenting.
The minor child Colton presently resides with the plaintiff. The court has heard testimony from the parties relative to an agreement brokered by the Family Relations Office and counsel for the minor child, Frank Santy. The court will order this agreement as to Colton as submitted to the court with minor modification.
As to the issue of child support, the court adopts the child support guidelines figures and argument of the counsel for the minor child concerning the child support to be paid by the defendant to the plaintiff based upon the split custody order. CT Page 7103
The parties are at loggerheads concerning the issue of alimony. The defendant contends that no alimony should be paid to the plaintiff, i.e. lump sum periodic or mixed based on the fact that he has approximately $136,000.00 of debt accumulated during the marriage and subsequent to the parties' separation. The plaintiff has filed bankruptcy, liquidating substantially all of her premarital debt.
The defendant further testified that he will not file bankruptcy due to the practical effect thereon on his present job with the State of Connecticut. While the court commends the defendant for his position that the creditors should be paid, the court will not penalize the plaintiff and deny her alimony based on the defendant's position. The record is devoid of any evidence of a potential loss of the defendant's job, other than his statement that he will be forced out of his job if a bankruptcy is filed. The court finds this testimony unpersuasive. The defendant is a public sector employee with rights provided by law concerning job protection. It is clear by the record that there is presently a substantial difference in the income of each party and the earning capacity. Carey v. Carey, 29 Conn. App. 436 (1992). The court awards periodic alimony to the plaintiff wife as hereinafter more fully set forth.
The court has considered all of the statutory factors of Conn. Gen. Stat. §§ 46b-56, 46b-56a, 46b-62, 46b-81, 46b-82 and other pertinent statutes, the tax implications and as previously stated, the parties present and future earnings an future earning capacity, the causes of the breakdown of the marriage and consequences of the financial awards set forth below.
Judgment shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. it is further ordered that:
1. CUSTODY AND VISITATION
A. The parties shall have joint legal custody of the minor children, Justin Harpie, born February 1, 1984 and Colton Harpie, born January 17, 1989. The primary residence of Justin shall be with the defendant in Newington, CT. The parties shall have shared parenting of Colton with primary residence of Colton with the plaintiff in Newington, CT.
B. The parties shall have parenting responsibilities subject to modifications by agreement of the plaintiff and defendant, based upon the schedule and activities of the minor children and with the necessary flexibility consistent with a joint custodial arrangement:
CT Page 7104 (1) Beginning on February 11, 2000, the defendant shall have Colton every alternate weekend from Friday after school until Monday morning. The defendant shall also have Colton Monday and Tuesday evenings from after school until 7:30 p.m.
 (2) Beginning on March 24, 2000, the defendant will have Colton overnight on Mondays.
 (3) Beginning on May 5, 2000, the defendant shall have Colton overnight on Mondays and Tuesdays.
(4) The defendant shall provide Colton with a cell phone.
 (5) Justin shall visit with the plaintiff at her home or outside her home at any time.
 (6) Each parent shall afford the other the right of first refusal regarding child care for periods of two hours or more in length. Each parent shall have additional time upon availability and agreement.
 (7) In the event that either parent desires to make any special plans to spend time with Colton that is not during a period that is not normally scheduled as theirs, they shall contact the other parent and agree prior to any discussion of such plans with Colton.
 (8) Each parent shall have the option of having Colton and Justin (subject to Justin's consent) with him or her for one week of uninterrupted time during the summer school vacation and will notify the other in writing by May 1st of the weeks that they intend to exercise that access. If either parent intends to travel outside of Connecticut, they will inform the other in advance and in writing of those travel plans including itineraries and contact numbers. Each parent shall support telephone contact between the minor children and the other parent during the course of travel. The plaintiff's desire to have Justin with her for said vacation period shall be made known to Justin by the defendant CT Page 7105 so that Justin understands that he has the opportunity to be with her for this period and that the plaintiff wants him to be with her if he so chooses.
 (9) The parties shall alternate the following legal holidays and school vacations with the defendant having Schedule A for odd-numbered years and Schedule B for even-numbered years. The sharing of said holidays and school vacations shall supersede the regular visitation schedule. Said holidays shall be designated from 9 a.m. until 7 p.m. unless otherwise agreed by the parties or otherwise designated herein. This schedule may be modified upon agreement of the parties.
 SCHEDULE A SCHEDULE B
Easter weekend Spring School Vacation
Memorial Day weekend Labor Day weekend
 Thanksgiving Day Christmas Eve Day to 11 a.m.
 Christmas Day at 11 a.m. Christmas Day to sometime 12/26
 Winter School Vacation New Years Eve and New Years Day
Independence Day
 (10) Regardless of the regular access schedule, the plaintiff shall have the children with her every Mother's Day and the defendant shall have the children with him every Father's Day. Said day is designated to be from 9 .m. until 7 p.m. unless otherwise agreed by the parties.
C. Each of the parties shall have a continuing role in providing a sound moral, social, economic and educational environment for their children. The parties shall exert their best efforts to work cooperatively in developing future plans consistent with the best interests of said children in amicably resolving such disputes as may arise. CT Page 7106
D. Each of the parties agrees to keep the other reasonably informed of the whereabouts of said children at all times. The parties further agree that if either of them has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said children, the defendant or plaintiff, as the case may be, shall promptly notify the other, and both parents shall have unlimited access privileges, consistent with the circumstances, for as long as the situation pertains.
E. On all matters of importance relating to the children's health and education and general welfare, the parties shall confer with each other with a view to adopting and following a harmonious policy. Both parties shall have access to all school and medical records of the children and no third party shall deny access to said records to either parent as a result of the custody agreement between the parties.
F. Both parents will in the utmost good faith encourage and foster the maximum relations of love, affection and respect between the children and the other parent. Neither parent will in any way impede, obstruct or interfere with the other parent's right of companionship with the children. Neither parent will engage in making disparaging remarks or criticize the other parent, nor allow anybody else to do so in the presence of the children. Neither parent will act in a manner which undermines the role of the other parent.
G. In the event that either party intends to relocate more than 20 miles from their present residence, he or she shall provide the other party with at least ninety (90) days advance written notice of the intent to do so and the reason for the relocation.
H. In the event of any future problems with respect to custody, access and/or visitation pertaining to Justin and/or Colton, the parties shall seek mediation with a mental health professional prior to petitioning the court for a modification of these custody and visitation orders.
2. CHILD SUPPORT
For purposes of child support Colton is found to primarily reside with the plaintiff. The defendant shall pay child support in the amount of $86.00 per week. The plaintiff shall claim Colton and the defendant shall claim Justin for state and IRS exemption purposes. Said child support order conforms to the Child Support Guidelines.
3. MEDICAL INSURANCE
CT Page 7107
The defendant shall maintain group medical insurance for the benefit of the minor children as available through his place of employment. The parties shall pay any unreimbursed and/or uncovered health care expenses for the minor children as computed by use of the Child Support Guidelines: Plaintiff 39% and defendant 61%. The provisions of § 46b-84
(d) shall also apply.
4. ALIMONY
The defendant shall pay to the wife the sum of $160.00 per week as periodic alimony by immediate wage garnishment until the first of the occurrence of the following events when alimony shall terminate:
1. Death of either party and/or;
2. Remarriage of the Wife;
 3. Cohabitation by the Wife as provided in Conn. Gen. Stat. § 46b-86.
5. LIFE INSURANCE
The defendant shall maintain his life insurance policy provided by his employer, the State of Connecticut, represented by the defendant as providing $80,000.00 death benefit as follows: the plaintiff and each minor child shall be named irrevocable beneficiaries in equal amounts ($26,667.66) until the alimony and/or child support obligations for each child ceases pursuant to the terms of this judgment.
6. COUNSEL FEES
Each party shall be responsible for his or her own legal fees. The counsel for the minor child Justin, Attorney Frank Santy has been paid $4,000 (prior to trial and bankruptcy filing of the defendant) by the parties ($2,000 each). The court finds that Mr. Santy is owed a balance of $4,000 for pre-petition fees and $3,125.00 for post bankruptcy petition fees. The court orders the plaintiff to pay one-half of the post-petition fees ($1,562.50) to Mr. Santy within 90 days from the date of the judgment. The court orders the defendant to pay one-half of the pre-petition balance ($2,000) and one-half of the post-petition balance of $1,562.50 for a total of $3,562.50 within 120 days of this judgment.
7. LIABILITIES
The plaintiff shall pay and hold the defendant harmless on her debts to CT Page 7108 New England Pool, J.C. Penney, Cherry Webb, Lord Taylor and loan from Regina Jones. The defendant shall be left to his legal right to file for bankruptcy debt relief, common law composition agreement and/or pay any and/or all of the debts listed on his financial affidavit dated May 4, 2000. The defendant shall hold the plaintiff harmless and indemnify her for any liability on the 1998 Federal Tax liability of approximately $9,600.00.
8. PENSION OR RETIREMENT PLAN
The defendant is the beneficiary of a Fleet Bank "Single Life Annuity" plan not presently on payout status. The defendant is ordered to transfer and/or assign to the plaintiff 50% of the value of said plan accrued as of the date of this judgment pursuant to a Qualified Domestic Relations Order. The defendant is ordered to prepare the documents necessary to effectuate said order in conformance with the requirements of the Plan Administrator. Each party is required to execute any and all documents necessary to carry out the provisions of this order. The court shall retain continuing jurisdiction to carry out the provisions of this order.
9. BANK ACCOUNTS, MOTOR VEHICLES, PERSONAL POSSESSIONS
Each party shall retain and have all title and possession in and to her or his respective bank accounts, motor vehicles, and other assets presently in her and/or his possession.
James J. Devine, J.